UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

MOSDOS CHOFETZ CHAIM INC.,

                        Debtor.
----------------------------------------------------------------x
RABBI MAYER ZAKS,

                        Appellant,

- against -

MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM
INC., CONGREGATION RADIN DEVELOPMENT INC.,
and RABBI ARYEH ZAKS,

                        Appellees.
----------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-3371 (CS)

Appearances:
Julie Pechersky Plitt
Oxman Law Group, PLLC
White Plains, New York
*Counsel for Appellant*

Michael Levine
Levine & Associates, P.C.
Scarsdale, New York

Tracy Klestadt
Klestadt Winters Jureller Southard & Stevens, LLP
New York, New York
*Counsel for Appellees*

Seibel, J.

      The instant appeal concerns the March 23, 2022 Order entered by Judge Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York, finding Rabbi Mayer Zaks ("Appellant") in contempt of court and imposing compensatory sanctions in the underlying adversary proceeding captioned *Congregants of Mosdos Chofetz Chaim Inc. v.*

*Mosdos Chofetz Chaim, Inc.*, No. 21-BK-7023 (Bankr. S.D.N.Y. 2021).  (A-431 to A-434 ("Contempt Order").)[1]

For the following reasons, the Contempt Order is AFFIRMED.

## I.    BACKGROUND

I assume the parties' familiarity with the underlying proceedings and recite only the facts relevant to the disposition of this matter.[2]

"The instant appeal, like the many that preceded it, is yet another part of a long-running quarrel between two rabbis – brothers, no less – regarding the transfer of real property located at 1-50 Kiryas Radin Drive, Spring Valley, New York 10977 [(the "Property")]."  *Zaks*, 2022 WL 4387450, at *1.  The Contempt Order under appeal stems from Appellant's conduct at an evidentiary hearing held on Appellees' second motion to enforce the Bankruptcy Court's order enjoining Appellant and others from entering onto or remaining on the Property (the "Injunction").[3]

---

[1] Citations with the prefix "A" refer to documents in the Appendix.  (*See* ECF No. 14-1.) "Bankr. ECF No." refers to documents filed in the United States Bankruptcy Court for the Southern District of New York under docket number 21-BK-7023.

[2] As noted by Judge Phillip Halpern, who has presided over numerous appeals from the relevant adversary proceeding, "Appellant's buckshot approach to appeals from Bankruptcy Court orders has produced a murky procedural history."  *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim Inc.*, No. 21-CV-5654, 2021 WL 5359663, at *1 n.2 (S.D.N.Y. Nov. 17, 2021).  But given the sheer quantity of pending and recently resolved appeals involving these parties arising from the underlying dispute over the property at issue, *see Zaks v. Congregation Radin Dev., Inc.*, No. 22-CV-3807, 2022 WL 4387450, at *1 n.1 (S.D.N.Y. Sept. 22, 2022), this Court has "[n]o doubt the parties are intimately familiar with the underlying facts and extensive procedural history of their dispute," *id.* at *2.

[3] The Bankruptcy Court had previously found Appellant and others in contempt of the Injunction and imposed coercive monetary sanctions for any future violations.  (*See* Bankr. ECF No. 22.)

On December 2, 2021, at the first of three hearings on the second enforcement motion, (A-64 to A-282), the Bankruptcy Court found "clear and convincing proof" that Appellant and others continued to violate the Injunction, (*id.* at 204:25). Nevertheless, the Bankruptcy Court adjourned the hearing to permit them to try to establish the "impossibility defense to contempt." (*Id.* at 207:16-18.)

On February 2, 2022, the Bankruptcy Court issued a notice that the continuation of the December hearing would take place on February 7, 2022 via Zoom. (Bankr. ECF No. 161.) On February 6, 2022, Appellant's counsel wrote to the Bankruptcy Court indicating that he was never made aware that the February 7, 2022 hearing had apparently originally been scheduled for February 3, 2022 prior to its adjournment to February 7. (A-285.) Appellant reasoned that because "no prior notice was given whatsoever with regard to an exact adjourned date" at the conclusion of the December 2 hearing or thereafter, due process required "the continued hearing presently set for February 7, 2022 be further adjourned." (*Id.*) He also stated that further discovery was required before the hearing could resume. (*Id.*)

On February 7, after Appellant's counsel requested a last-minute change in the time of the hearing and failed to appear at the scheduled hour, the Court summarized the persistent issues he experienced with Appellant and others also in contempt of the Injunction:

> The record is clear that the alleged contemnors here have tried the Court's patience repeatedly throughout this matter. I was reminded of that again in re-reading the transcript of the December 2 hearing in which certain alleged contemnors, who had submitted declarations and were required to testify refused to testify until the Court said it would hold them separately in contempt, and the repeated, and I believe willful, technical problems raised by counsel for the alleged contemnors and the alleged contemnors in the taking of their testimony first, including having people in the room besides counsel and the witness; second, in having counsel and the witness testify from one laptop and repeatedly doing it in a way that was inaudible. I believe there had not been one hearing in the litigation here which began in May of 2021 where the alleged contemnors

3

> have not asked for an adjournment, and often done so at the last minute, with no basis for it.

(A-287 to A-308 at 4:23-5:13.)  After the hearing was delayed to ensure Appellant and Appellant's counsel's attendance, the Bankruptcy Court granted Appellant's application to adjourn the hearing to permit Appellant's counsel time to prepare his witnesses.  (*See id.* at 18:8-21.)  In doing so, Judge Drain emphasized the following points to Appellant's counsel:

- I've already addressed the risk that your clients are going to have to pay. All right?  Your clients, the way they have conducted themselves vis-a-vis this Court is disgraceful.  And you're a party to it now.  You've been a party to it.  There's not been one hearing that I've had where I've not gotten a last-minute request for an adjournment from you. (*Id.* at 16:16-21.)

- I am truly, truly, as you can tell, and I am actually pretty mild mannered, I am truly frustrated by your conduct and your client's conduct.  I'm going to schedule a hearing.  And I'm going to get the date from you now, so there's no runaround. (*Id.* at 16:23-17:2.)

- Now, as far as the mechanics for the hearing are concerned, when we last had a rehearsal for this, which was on December 7th, your clients did not appear for the rehearsal, and the transcript reflects, as did the trial, the problems in the technological quality of it.  They are to be on a separate computer from you, so that I can hear them, and I can hear you.  And they are to engage in the rehearsal with our IT staff, so I can make sure they can be heard.  And no one shall be in the room with them.  Absolutely, no one.  Or communicating with them in any way by email or otherwise, unless I specifically authorize it on the transcript of the hearing.  Are we clear about that? (*Id.* at 18:10-21.)

At the March 4, 2022 Zoom hearing, (A-309 to A-430 ("Mar. Hrg. Tr.")), Appellant testified as a witness, (*see id.* at 113:9).  Immediately before his testimony, his counsel informed Judge Drain that the Sabbath would begin around 5:30 p.m. that night and requested to adjourn the hearing two hours in advance of that.  (*Id.* at 109:14-16).  The Bankruptcy Court rejected Appellant's counsel's request, stating, "I understand the rules about sundown and the like, but sundown is not at 3:30 or anywhere close to 3:30.  So I was thinking of ending at 5:30." (*Id.* at 109:17-19.)

4

Prior to the hearing, Appellant had submitted declarations constituting his direct testimony pursuant to the Bankruptcy Court's procedures. (*See id.* at 110:14-113:8.) During the hearing, Appellant repeatedly interrupted the proceedings in an attempt to supplement his direct testimony:

> THE COURT: So, Rabbi Zaks, would you raise your right hand, please?
>
> RABBI M-ZAKS: Yes. I will certainly raise my hand, and then I would like to speak.
>
> (Rabbi Mayer Zaks, the witness, sworn.)
>
> THE COURT: Okay. All right. So, –
>
> RABBI M-ZAKS: One thing –
>
> THE COURT: No, no.
>
> RABBI M-ZAKS: Your Honor?
>
> THE COURT: Rabbi Zaks, you're a witness.
>
> RABBI M-ZAKS: I'm a witness? I must be on record.
>
> THE COURT: Rabbi Zaks, you may think this is unfair, but the procedures need to be followed. Your testimony is being called by your counsel. Your testimony is in the form of two declarations that were submitted as witnesses declarations. The way testimony –
>
> RABBI M-ZAKS: But I wanted to add.
>
> THE COURT: I will not let you testify if you keep interrupting me like this! I just won't. All right? Your direct testimony is in the form of these two declarations. I'm going to get them as your testimony first, as you've heard other witnesses, and then I'm going to ask if there's any objection to the admissibility of any portion of these documents. And then your counsel will allow cross examination on these documents. And then your counsel can redirect on that cross. That's it. That's what testimony is. So, Rabbi Zaks, you submitted a certification –
>
> RABBI M-ZAKS: (Inaudible.)
>
> THE COURT: Sorry? What?
>
> (No response.)
>
> THE COURT: You submitted a certification, dated November 30, 2021. It was intended to be your direct testimony in connection with the defense of what has been referred to here as the motion to enforce or the motion to enforce the enforcement order of September 9, 2021. As we pointed out, certain aspects of the declaration have already been addressed by my ruling on the movants direct case. But others have not been. So, let me ask you, Rabbi Zaks, is there anything

5

in this declaration that you wish to change knowing that it would be your direct testimony. And I'm going to ask you about the supplemental declaration too.

RABBI M-ZAKS: Right. I want to definitely add to it. I don't think I have to change anything. I don't think so, but I certainly need to add.

THE COURT: No. Is there anything in it you want to change because you believe it's inaccurate? It would be your direct testimony.

RABBI M-ZAKS: Judge, Michael Levine,[4] I didn't do it. And he shouldn't be Judge Michael Levine. And I'll listen to Judge Drain.

THE COURT: Rabbi Zaks, there are procedures that I have had for trials for 20 years.

RABBI M-ZAKS: I agree. I agree, judge.

THE COURT: People testify on direct –

RABBI M-ZAKS: I agree.

THE COURT: You know what?

RABBI M-ZAKS: Don't prejudge me.

THE COURT: If you interrupt again, I will not take your testimony. This is –

RABBI M-ZAKS: I apologize.

THE COURT: Now, I'll turn to the supplemental declaration, which is dated February 6, 2022. Is there anything in this supplemental declaration, knowing that it is submitted in opposition to the emergency motion for enforcement of the September 9th order, that you wish to change. This is not to add to, but just to change because you've concluded it's inaccurate as your direct testimony.

RABBI M-ZAKS: To change? I don't think so. But to add, I need to add something that obviously I learned now. So, I have to add to my testimony.

THE COURT: No, it's not obvious. So, is there any objection to the admissibility of any provision of – let's deal with first – the November 30, 2021, declaration or certification?

RABBI M-ZAKS: The answer is no.

(*Id.* at 113:9-116:10.)

While opposing counsel was laying out his objections to Appellant's supplemental declaration, Appellant appeared to be speaking to someone else in the room while his computer

---

[4] Michael Levine represented one of the parties seeking to enforce the Injunction at the hearing and represents the Appellees on this appeal.

6

microphone was muted.  (*Id.* at 118:4-10.)  Another opposing counsel suggested that Appellant was "obviously discussing this with someone else in the room," (*id.* at 118:9-10), but Judge Drain responded that Appellant was "just trying to have someone help him with his computer," (*id.* at 118:11-12).  When opposing counsel stated that "these delays for us to string this out until five is a problem," (*id.* at 118:19-21), Appellant became exceedingly disruptive:

> MR. LEVINE:  Our intention is to get this hearing done today.  And these delays for us to string this out until five is a problem.
>
> RABBI M-ZAKS:  Can I address that?  Because that's a direct accusation to me.
>
> MR. SCOTT:  No! No! The witness –
>
> THE COURT:  No.  I had a question.
>
> RABBI M-ZAKS:  I didn't ask you.  You're not the judge.
>
> THE COURT:  Mr. Zaks?  Rabbi Zaks!
>
> RABBI M-ZAKS:  You'll meet the judge in the –
>
> THE COURT:  Rabbi Zaks, you are just a witness.
>
> RABBI M-ZAKS:  Don't you dear [*sic*] do that.
>
> THE COURT:  All right.  That's it.
>
> RABBI M-ZAKS:  Don't you dear [*sic*].
>
> THE COURT:  That's it.  That's it.  I am imposing contempt right now on the cost of resuming this hearing.  Between now and the next hearing, Rabbi Zaks will pay the use and occupancy double!  I've had it!  And there's a long record behind this. It goes back to the statements I made –
>
> RABBI M-ZAKS:  I'm sorry.
>
> THE COURT:  No, no.  No, no.  I warned you three times just in the last 20 minutes.  This is inexcusable!  You and your allies have been treating this court and the district court the same way for months!  I put this on the record on February 7th, I laid it out then.  The record is just replete of instances like this time and time again and time again.  I mention[ed] 28 U.S.C. 1927 for a reason, Mr. Graubard, earlier today!  I've had it!  Now, you shall stop this, Rabbi Zaks!  It's impossible!  I'm sorry!  I'm sorry!  $5,000 a day until the next hearing, plus use and occupancy!  I've had it!  Inexcusable.
>
> RABBI M-ZAKS:  Your Honor?
>
> THE COURT:  No!  No!  No!
>
> RABBI M-ZAKS:  Your Honor?
>
> THE COURT:  No!

7

> MR. GRAUBARD: Excuse me, Your Honor, can I have one moment with the witness?
>
> THE COURT: No! Listen! Contempt is contempt! I am generally very mild mannered, but I have had it! I have had it with Rabbi Zaks! I've had it! He is in contempt of this Court! And I am in contempt of his behavior in front of this Court. It is inexcusable.
>
> MR. GRAUBARD: Your Honor, he was trying to answer the question on number one.
>
> THE COURT: No, he wasn't, he was arguing with Mr. Levine.

(*Id.* at 118:19-120:14.)

On March 23, 2022, the Bankruptcy Court issued the Contempt Order, in which it summarized Appellant's "unruly, disorderly, argumentative, and improper conduct" at the March 4, 2022 hearing. (Contempt Order at 3.) Judge Drain held that Appellant's conduct was "intended to interfere with and disrupt the orderly proceedings before the Court" and noted that the Court had twice warned him to discontinue his conduct but he ignored those warnings. (*Id.*) Accordingly, the Court held Appellant in contempt, finding the evidence clear and convincing in light of Appellant's conduct at the February 7, 2022 and March 4, 2022 hearings, which "unduly delayed consideration of the Second Enforcement Motion, needlessly multiplied proceedings before the Court, and required needless repeated preparation for the conclusion of the hearing on the Second Enforcement Motion." (*Id.* at 3-4.) The Court ordered Appellant to pay compensatory sanctions consisting of the moving party's reasonable fees and expenses in preparing for the adjourned hearing. (*Id.* at 4.) The instant appeal followed.

## II. **LEGAL STANDARD**

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. "A district court reviews a bankruptcy court's conclusions of law de novo, its discretionary decisions for abuse of discretion, and its findings of fact for clear error." *Ridgewood Savings Bank v. Depietto* (*In re Depietto*), No. 20-

8

CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021). Mixed questions of law and fact are reviewed "either de novo or under the clearly erroneous standard depending on whether the question is predominately legal or factual." *Italian Colors Rest. ex rel. Nat'l Supermarkets Ass'n (In re Am. Express Merchs.' Litig.*), 554 F.3d 300, 316 n. 11 (2d Cir. 2009), *vacated on other grounds by Am. Express Co. v. Italian Colors Rest.*, 559 U.S. 1103 (2010).[5]

"A bankruptcy court's award of sanctions, including findings of contempt, are reviewed for abuse of discretion." *In re Gravel*, 6 F.4th 503, 511 (2d Cir. 2021), *cert. denied sub nom. Sensenich v. PHH Mortg. Corp.*, 142 S. Ct. 2829 (2022). "[T]he bankruptcy court is better situated than the [reviewing court] to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted . . . ." *In re Highgate Equities, Ltd.*, 279 F.3d 148, 152 (2d Cir. 2002); *see United States v. Browne*, 318 F.3d 261, 266-67 (1st Cir. 2003) (for summary contempt, "considerable (although not conclusive) deference" paid to judge's "on-the-scene assessment"); *id.* (presiding judge "surely in the best position to assess" conduct); *cf. Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) ("The trial judge is in the best position to review the factual circumstances and render an informed judgment as he is intimately involved with the case, the litigants, and the attorneys on a daily basis."). Under the abuse of discretion standard, the reviewing court will reverse only if it has "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *S.E.C. v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013). "A bankruptcy court abuses its discretion if its decision rests on an error of law or a clearly erroneous factual finding or cannot be located within the range of

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

9

permissible decisions." *Wilk Auslander LLP v. Murray* (*In re Murray*), 900 F.3d 53, 59 (2d Cir. 2018).

## III. DISCUSSION

Appellant argues that the Bankruptcy Court abused its discretion in holding Appellant in civil contempt and imposing sanctions. (*See generally* ECF No. 14 ("Appellant's Mem.").) Specifically, Appellant claims that Bankruptcy Court exceeded its authority in finding Appellant in contempt without identifying a "specific and definite" court order that was violated, without providing notice or a hearing, and without specifying authority for the award of sanctions. (*Id.* at 19-23.) Appellant also argues that the Bankruptcy Court abused its discretion in imposing sanctions without finding that Appellant acted in bad faith, and even if it had, any such finding would be erroneous and motivated by personal animus. (*Id.* at 25-29.)[6]

"It is well established that bankruptcy courts have power to enter civil contempt orders" and "[t]he power to impose civil contempt sanctions." *In re Markus*, 607 B.R. 379, 394 (Bankr. S.D.N.Y. 2019), *aff'd in relevant part*, *Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020)*; see In re Sanchez*, 941 F.3d 625, 627-28 (2d Cir. 2019) ("As our sister circuits have explained, inherent sanctioning powers are not contingent on Article III, but rather are, as their name suggests, inherent in the nature of federal courts as institutions charged with judicial functions. We therefore hold that bankruptcy courts, like Article III courts, possess inherent sanctioning powers."); *see also In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007) ("The power to impose civil contempt sanctions applies in Bankruptcy Court as well."); *In*

---

[6] I need not address Appellant's defense that his compliance with Judge Drain's instructions was "factually impossible." (Appellant's Mem. at 24.) The imposition of contempt sanctions was not based on Appellant's or Appellant's counsel's observance of the Sabbath or the request to adjourn the March 4th hearing early to prepare for that observance.

10

*re MarketXT Holdings Corp.*, No. 04-BK-12078, 2006 WL 408317, at *1 (Bankr. S.D.N.Y. Jan. 27, 2006) ("It is well accepted, in light of the 2001 amendments to [Federal Rule of Bankruptcy Procedure] 9020, that bankruptcy courts have power to enter civil contempt orders."). "This power stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *United States v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

Appellant concedes that bankruptcy courts have inherent contempt powers but argues that the Bankruptcy Court here did not afford him the procedural safeguards required by due process, including identifying a "clear and definite" order, providing him notice and a hearing, and specifying explicit statutory authority for imposition of sanctions. (Appellant's Mem. at 20-23.) Appellant's objection, however, does not address the distinction between direct and indirect contempts, and their differing procedural requirements.

> Direct contempts implicate the trial judge's ability to control behavior in and around the court room, and typically involve conduct that must be addressed quickly and often summarily. As the Supreme Court explained, direct contempts are used "to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice," and summary adjudication of direct contempts is justified "in light of the court's substantial interest in rapidly coercing compliance and restoring order."

*United States v. Rangolan*, 464 F.3d 321, 324 (2d Cir. 2006) (quoting *Bagwell*, 512 U.S. at 832). "Thus, petty, direct contempts in the presence of the court traditionally have been subject to summary adjudication," *Bagwell*, 512 U.S. at 832, and "[d]irect contempt may be punished summarily without notice and a hearing," *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996) (citing *Bloom v. Illinois*, 391 U.S. 194, 204 (1968)); *see In re Oliver*, 333 U.S. 257, 275 (1948) (due process requirements inapplicable only to contempt "in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the

11

misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public").

> Indirect contempts, by contrast, generally involve disobedience to court orders, and can occur anywhere. While indirect contempt proceedings often involve challenges to judicial authority, they do not necessarily implicate courtroom decorum. Summary adjudication of indirect contempts is prohibited, and indirect contemnors are entitled to all the procedural protections of [Federal Rule of Criminal Procedure] 42(a).

*Rangolan*, 464 F.3d at 324; *cf.* 18 U.S.C. § 401 (court has "power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as – (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice"); *United States v. Martin-Trigona*, 759 F.2d 1017, 1024 (2d Cir. 1985) ("[The power to punish as contempt] is limited to circumstances where the misbehavior is in the presence of the judge and is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court.").

> Although the contempt power should not be used in a manner that impinges on legitimate advocacy, a judge need not tolerate disrespect or a deliberate show of defiance in open court. To affront the dignity of the court the misbehavior need not insult the judge personally, but may consist of threats, disrespect or other like behavior.

*United States v. Giovanelli*, 897 F.2d 1227, 1232 (2d Cir. 1990); *see, e.g.*, *United States v. Marshall*, 371 F.3d 42, 46 (2d Cir. 2004) (upholding direct contempt order where defendant made obscene remark about a judge and his wife during sentencing hearing); *United States v. Ruggiero*, 835 F.2d 443, 444-46 (2d Cir. 1987) (upholding direct contempt order where court had warned counsel to silence client but client "persisted in his comments and directed them personally at the court"); *United States v. Martin*, 251 F. App'x 979, 982 (6th Cir. 2007) ("[E]ven nonprofane interruptions and direct responses to

12

the court's statements may pose a threat to the administration of justice and thereby warrant summary proceedings.").[7]

Here, the Bankruptcy Court did not need to identify a "clear and definite" order, provide the Appellant notice and a hearing, or specify explicit statutory authority for the imposition of sanctions because the Contempt Order was a result of Appellant's direct contempt.[8]  Judge Drain's decision to find Appellant in contempt followed Appellant's repeated *in-court* interruptions, outbursts, and apparent attempts to delay the proceeding, (*see* Mar. Hrg. Tr. at 113:15, 113:25, 114:11, 114:25, 115:8-10, 115:17, 116:14, 118:22-23, 119:1-2, 119:4, 119:6, 119:8), and Judge Drain repeatedly instructed Appellant to stop interrupting, (*see id.* at 114:1-2 ("I will not let you testify if you keep interrupting me like this!"); *id.* at 115:18-19 ("If you interrupt again, I will not take your testimony.").) Despite his warnings, Appellant continued to speak over him and disrupt the hearing.

---

[7] Appellant argues in reply that *Gravel* supports the propositions that "bankruptcy courts do not have the same contempt power as District Courts" and that a bankruptcy court "may only impose contempt sanctions after invoking specific authority for imposition of such." (ECF No. 18 ("Appellant's Reply") at 1 (emphasis in original).)  But that case is inapposite for several reasons.  There the sanctions being reviewed were for indirect contempt outside the judge's presence, and were not imposed pursuant to the Court's inherent powers.  Further, the case addressed the procedural requirements for criminal sanctions, but both parties here agree the Contempt Order was a non-punitive, compensatory sanction.  *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required.  To the extent that such contempts take on a punitive character, however, and are not justified by other considerations central to the contempt power, criminal procedural protections may be in order.").  *Gravel* stated that review of a bankruptcy court's contempt order is more exacting than under the ordinary abuse-of-discretion standard." 6 F.4th at 511.  For the same reasons, I do not believe a more exacting standard applies to review of a bankruptcy court's sanctions imposed for contempt committed in the court's presence, but even if it did, the sanctions here would survive that heightened scrutiny.

[8] That Judge Drain noted that he had referred to 28 U.S.C. § 1927 earlier in the hearing, (Mar. Hrg. Tr. at 119:15-24), does not alter this conclusion.

13

(*Id.* at 113:9-116:10, 118:19-120:14.)  As the Second Circuit has made clear, "a judge need not tolerate disrespect or a deliberate show of defiance in open court." *Giovanelli*, 897 F.2d at 1232.  Judge Drain did not abuse his discretion by finding Appellant in civil contempt, where Appellant repeatedly engaged in efforts to postpone the hearing, attempted to augment his direct testimony in violation of Judge Drain's procedures, and repeatedly interrupted Judge Drain and others, including berating opposing counsel.

"The Bankruptcy Court was in the best position to determine if [Appellee] committed contempt while making appearances before it" and its "determination was within [its] sound discretion.  Nothing in the record leaves this Court with the definite and firm conviction that the Bankruptcy Court committed a clear error of judgment." *City of El Monte v. Isaac R. Zfaty & Zfaty* (*In re TV, LLC*), No. 12-CV-2222, 2012 WL 12882774, at *2 (C.D. Cal. July 10, 2012), *aff'd*, 588 F. App'x 587 (9th Cir. 2014).

Appellant also argues that the Bankruptcy Court abused its discretion by imposing sanctions without finding that Appellant acted in bad faith.  (Appellant Mem. at 25-29.)  Appellees respond that "there is no requirement for a finding of bad faith in connection with disruptive conduct taking place in the presence of the Court."  (ECF No. 15 ("Appellees Opp.") at 24-25.)

As noted by Appellant in his brief, the Second Circuit in *In re JJE & MM Grp. LLC*, 692 F. App'x 43, 45 (2d Cir. 2017), held that

> [w]hile bankruptcy courts can impose compensatory sanctions for civil contempt, a bad faith finding is required when a court imposes attorney's fees as a sanction, or when the court sanctions an attorney for conduct that is integrally related to the attorney's role as an advocate for his or her client.

*Id.* at 45; *see In re Dunne*, No. 17-CV-1399, 2018 WL 4654698, at *8 (D. Conn. Sept. 27, 2018) ("[I]n cases in which there is no statute or rule expressly authorizing an award of

14

fees, and thus where the court must rely only on its inherent authority, the Court of Appeals has indicated that an explicit finding of bad faith is required for an award of attorney's fees."). *But see Branch of Citibank, N.A. Established in Republic of Arg. v. De Nevares*, No. 21-CV-6125, 2022 WL 1315587, at *2 (S.D.N.Y. May 3, 2022) ("The Second Circuit has expressed no opinion on whether a showing of willfulness or bad faith is required before attorney's fees may be awarded for a violation of a court order, but willfulness strongly supports granting attorney's fees and costs to the party prosecuting the contempt."), *appeal filed*, No. 22-1083 (2d Cir. May 12, 2022); *Citigroup Inc. v. Sayeg*, No. 21-CV-10413, 2022 WL 596073, at *4 (S.D.N.Y. Feb. 28, 2022) ("The Second Circuit has not decided whether a finding of willfulness or bad faith is required before a court may order attorneys' fees as a sanction for violating a court order."); *Medina v. Buther*, No. 15-CV-1955, 2019 WL 4370239, at *3 (S.D.N.Y. Sept. 12, 2019) ("The Court of Appeals has held that while willfulness may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them."). But *In re JJE & MM Group* is not applicable because the contemptuous conduct at issue there was committed out of court, as was the conduct in the cases cited in *In re JJE & MM Group*. *See* 692 F. App'x at 45-46. Appellant provides no explanation as to why the bad faith requirement would apply to the instant matter given that the sanctions were imposed summarily and as a result of Appellant's in-court conduct. Moreover, Judge Drain clearly found that Appellant's conduct was willful and committed for the purposes of delaying the proceeding, which would suffice to show bad faith. (*See* Contempt Order at 3 (Judge Drain describing Appellant's conduct as

"unruly, disorderly, argumentative, and improper" and "intended to interfere with and disrupt the orderly proceedings before the Court.").)

Accordingly, I find that the Bankruptcy Court did not abuse its discretion in holding Appellant in contempt and imposing compensatory sanctions.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Contempt Order is AFFIRMED. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: March 30, 2023
      White Plains, New York

                                              CATHY SEIBEL, U.S.D.J.